# EXHIBIT A

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

**EMPLOYMENT AGREEMENT**

4770220
**Employee ID:** _____

This EMPLOYMENT AGREEMENT (this "Agreement"), made this 17th day of February, 2021, by and

between Aston Carter, Inc. , hereinafter referred to as "COMPANY", and _____ ,
                                                                          Christopher Bero

hereinafter referred to as "EMPLOYEE."

WHEREAS, COMPANY is engaged in the highly competitive businesses of recruiting, sales,

employing, and providing the services of professional, financial, call center, and/or other personnel on a

temporary, contract, contract to permanent, or permanent basis to companies and other entities

throughout the United States and other countries (hereinafter collectively " COMPANY's Business");

WHEREAS, the parties hereto recognize and acknowledge that COMPANY will provide EMPLOYEE

portions  of the Confidential Information (as defined in Paragraph 6 hereof) of COMPANY for use in the

performance of these services and of this Agreement. EMPLOYEE further acknowledges that the Confidential

Information is a valuable  property right of COMPANY, and that the same is information and knowledge not

generally known in the public   domain and that the maintenance of secrecy concerning the Confidential

Information is essential to the business  affairs, value, effectiveness, good will, competitive advantage, and

continuing viable business status of COMPANY;

WHEREAS, the parties hereto recognize, and do hereby acknowledge, that the disclosure to other

third-  party persons or organizations, misappropriation, collection or retention for future use, whether

directly or  indirectly, of the Confidential Information will irreparably and substantially cause considerable

financial and other  loss, detriment and damage to COMPANY;

WHEREAS, EMPLOYEE will: (a) become intimately involved with and knowledgeable of COMPANY's

Confidential Information;  (b) become personally acquainted with and have regular access to COMPANY's

Business relationships including but not limited to its customers;  and (c) receive COMPANY's unique and

specialized training;

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

WHEREAS, COMPANY wishes to be able to provide EMPLOYEE with access to COMPANY's B usiness relationships including with customers and impart portions of the Confidential Information to EMPLOYEE with the secure knowledge that such   Confidential Information will be solely and strictly used for COMPANY's exclusive benefit and not in competition with or  to the detriment of COMPANY, directly or indirectly, by EMPLOYEE or any of his/her agents, servants, future   employees or consultants, or future employers;

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants and restrictions contained herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged,   each of the parties, their respective personal representatives, heirs, successors and assigns, intending to be legally bound hereby agree as follows

1.      **AGREEMENT OF EMPLOYMENT:** COMPANY hereby employs or agrees to continue to employ the above named EMPLOYEE for the applicable position in  Recruiting, Sales or Practice Leadership (in  respective positions/titles including but not limited to Recruiter Trainee, Recruiter, P r a c t i c e  L e a d ,  a n d  A c c o u n t  M a n a g e r    , On Premise Manager, and On Premise Account Executive)with a base annual salary (which includes, where applicable, a geographic differential ) to be paid in weekly installments or on such other periodic basis  as shall be determined by COMPANY in accordance with applicable law, plus incentive pay (including, but not limited to, bonuses) as may be determined by   COMPANY in its sole and absolute discretion from time to time.

EMPLOYEE agrees to be so employed and may be promoted and compensated accordingly at COMPANY's sole and absolute discretion. In addition, EMPLOYEE agrees that EMPLOYEE's salary may change if EMPLOYEE is  relocated (where a higher, lower, or no location adjustment is paid). The scope of EMPLOYEE's employment,   including duties, assignments, positions and all responsibilities, shall be as established by COMPANY from time to  time. The parties agree that EMPLOYEE shall devote his/her full time, loyalty, attention, and energies to EMPLOYEE's job  responsibilities and COMPANY's Business, and during the term of this Agreement shall not enter into or engage  in any conflicting business activity.

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

In turn, COMPANY will provide EMPLOYEE with: (a) Confidential Information belonging to COMPANY and updates thereto; (b) authorization to communicate with customers and prospective customers; (c) authorization to communicate with Contract Employees (as defined in Paragraph 4); and/or (d) authorization to receive or participate in specialized training related to COMPANY's Business. EMPLOYEE's services are of special, unique and extraordinary value to COMPANY, and EMPLOYEE's special position of trust and confidence necessitates the restrictions in this Agreement. EMPLOYEE stipulates that the restrictions in this Agreement (including post-employment restrictions) are reasonable and necessary to preserve COMPANY's legitimate and protectable business interests in, among other things, its trade secrets, Confidential Information, and goodwill with customers and employees, and they do not unduly interfere with EMPLOYEE's ability to earn a livelihood. EMPLOYEE further stipulates that the confidentiality obligations of this Agreement are inadequate to protect trade secrets and Confidential Information standing alone and that the additional restrictions (such as Paragraphs 3 & 4) are necessary because activities of the type restricted therein lead to the use or disclosure of COMPANY's trade secrets and Confidential Information in ways that either cannot be detected or can only be detected after irreparable harm has occurred.

As used in this Agreement, "Affiliates" means COMPANY's successors in interest, affiliates (as defined in Rule 12b-2 under Section 12 of the Securities Exchange Act), subsidiaries, parents, purchasers, or assignees.

2. **TERM OF EMPLOYMENT:** The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised and that no guaranteed or definite term of employment is being given or implied by this Agreement. Although EMPLOYEE's employment is "at will," EMPLOYEE agrees to provide COMPANY two (2) weeks' advance notice of EMPLOYEE's decision to terminate employment for the reasonable purpose of facilitating the transition of responsibilities or ongoing matters as COMPANY might require. It is further expressly understood and agreed by EMPLOYEE that COMPANY may terminate EMPLOYEE's employment with COMPANY at any time

either with or without cause, in COMPANY's sole and absolute discretion. In the event that COMPANY terminates EMPLOYEE's employment for cause as determined solely by COMPANY, then EMPLOYEE shall not be entitled to any advance notice of said termination. Should EMPLOYEE's employment be terminated by COMPANY without cause, then EMPLOYEE shall be afforded a minimum of twenty-four (24) hours' notice of said termination. Such notice shall be given to EMPLOYEE either orally or in writing, and if in writing shall be effective as of the date delivered, or sent, if by mail, to EMPLOYEE's last known address carried on COMPANY's files. EMPLOYEE agrees to keep COMPANY informed as to EMPLOYEE's current living and mailing address at all times while employed by COMPANY.

The terms of Paragraphs 3 through 16 (including the State Specific Appendix attached hereto) of this Agreement shall survive the termination, for whatever reason, of EMPLOYEE's employment with COMPANY.

**3.**      **NON-COMPETE COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by COMPANY or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter ("Restricted Period"), EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of COMPANY's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment ("Look Back Period"), within a radius of fifty (50) miles from the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the Look Back Period ("Restricted Area").

The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and (ii) activities undertaken by EMPLOYEE indirectly through any individual, or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

**4.**      **NON-SOLICITATION COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

employment, whether by COMPANY or EMPLOYEE and whether with or without cause, for the Restricted

Period EMPLOYEE shall not directly or indirectly:

    (a)    Communicate with any individual or entity which is a Covered Customer for the purpose

of:

        (i)    entering into any business relationship with such Covered Customer if the business

relationship is  competitive with any aspect of COMPANY's Business (or any COMPANY

affiliate which employed EMPLOYEE during the Look Back Period) for which EMPLOYEE

performed services or about which EMPLOYEE obtained Confidential Information during the

Look Back Period, or

        (ii)    reducing or eliminating the business such customer conducts with COMPANY (or any

COMPANY affiliate which employed EMPLOYEE during the Look Back Period); or

    (b)    Communicate with any person who has been a Regular Employee within the Look Back

Period and about whom EMPLOYEE obtained knowledge or had  contact by reason of EMPLOYEE's

employment with COMPANY (or any COMPANY affiliate which employed EMPLOYEE during the Look Back

Period) for the purpose of:

        (i)    providing services to any individual or entity whose business is competitive with

COMPANY, or

        (ii)    leaving the employ of COMPANY; or

    (c)    Communicate with any person who has been a Contract Employee within the Look Back

Period and about whom EMPLOYEE obtained knowledge or had  contact by reason of EMPLOYEE's

employment with COMPANY (or any COMPANY affiliate which employed EMPLOYEE during the Look Back

Period) for the purpose of:

        (i)    ceasing work for COMPANY at customers of COMPANY , or

        (ii)    refraining from beginning work for COMPANY at customers of COMPANY,
          or

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

      (iii)   providing services to any individual or entity whose business is competitive with COMPANY.

As used in this Paragraph 4: "Regular Employee" means an employee of COMPANY who is not a "Contract Employee"; and "Contract Employee" means an employee or candidate for employment of COMPANY who is or was  employed to perform services or solicited by EMPLOYEE to perform services at or for customers of COMPANY; and "Covered Customer" means an COMPANY customer (person or entity) that EMPLOYEE had business-related contact with or obtained Confidential Information about during the Look Back Period, and, where enforceable under applicable law, a Covered Customer shall also include  those persons or entities with whom COMPANY had a reasonable expectation of doing business based on pending requests for proposal, open bids or similar communications in form and substance in which EMPLOYEE was involved occurring during the Look Back Period.

The prohibitions contained in (a), (b) and (c) above shall extend to (i) activities undertaken by EMPLOYEE  directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual  or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or  consultant or participates in some other capacity.

Where required by applicable law, the restrictions in Paragraph 4 shall be limited to the Restricted Area.

**5.**　　　**INDEMNIFICATION AND HOLD HARMLESS:** EMPLOYEE represents and warrants that EMPLOYEE's  employment with COMPANY will not violate the terms and conditions of any agreements entered into by EMPLOYEE  prior to or during EMPLOYEE's employment with COMPANY (including but not limited to agreements with prior employers). EMPLOYEE covenants and agrees to indemnify and hold COMPANY harmless (including but not limited to payment of COMPANY's attorneys' fees and costs) from any and all suits or claims arising out of any breach of any terms and conditions  contained in any such

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

agreements entered into by EMPLOYEE.

6.      **COVENANT NOT TO DIVULGE CONFIDENTIAL INFORMATION:** EMPLOYEE covenants and agrees that,  except as required by the proper performance of EMPLOYEE's duties for COMPANY, EMPLOYEE shall not use,  disclose or divulge any Confidential Information of COMPANY (or any COMPANY affiliate which employed EMPLOYEE during the Look Back Period) to any other person or entity besides COMPANY.  For purposes of this Agreement, "Confidential Information" shall mean information not generally known by the  competitors of COMPANY or the general public concerning COMPANY's Business that COMPANY takes reasonable   measures to keep secret, including but not limited to: financial information and financial controls; sales and   marketing strategies; acquisition plans; pricing and costs; customers' names, addresses, e-mail addresses, telephone numbers, and  contact persons; customers' staffing requirements; margin tolerances regarding pricing; the names, e-mail addresses, addresses,   telephones numbers, skill sets, availability and wage rates of Contract Employees; sales, recruiting, pricing and  marketing techniques; sales and recruiting manuals; forms and processes for acquiring and recording information; management  analysis  of  salaries  based  on  market  competitiveness,  employee  compensation,  and performance evaluations of Regular Employees; and management practices, procedures and processes. These restrictions on use or disclosure of Confidential Information will only apply for two (2) years after the  end  of  EMPLOYEE's  employment  where  information  that  does  not  qualify  as  a  trade  secret  is concerned.  The restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret.

With  the  exception  of  management analyses  of  personnel  information  acquired  as  part  of EMPLOYEE's job duties for COMPANY, if  EMPLOYEE  is  a  non-management  employee  then  Confidential Information  will  not  include  otherwise  lawfully  acquired information about salary, wages, hours or other terms and conditions of employment for non-management   employees that is or can be used by non-management employees for purposes protected by §7 of the National Labor Relations  Act such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for  their mutual

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

aid or protection. If EMPLOYEE receives a subpoena, court order, or similar directive that compels disclosure of Confidential Information, EMPLOYEE will provide COMPANY's legal department as much advance notice as possible under the circumstances so that it may take steps to protect its Confidential Information unless such notice is prohibited by law.  If EMPLOYEE learns during EMPLOYEE's employment of any unauthorized use or disclosure of COMPANY's Confidential Information, EMPLOYEE will immediately notify the human resources department or EMPLOYEE's immediate supervisor. To the extent EMPLOYEE retains any rights of ownership and/or control in Confidential Information, EMPLOYEE does hereby assign all such rights to COMPANY to the fullest extent allowed by law.  This paragraph is subject to Paragraph 16 below.

**7.** **RETURN AND PRESERVATION OF RECORDS:** EMPLOYEE agrees, upon termination of EMPLOYEE's employment with COMPANY for any reason whatsoever or sooner if requested, to return to COMPANY all records and other property (whether on paper, computer discs or in any other form and including, but not limited to, Confidential Information), and copies thereof,   belonging or pertaining to COMPANY (collectively "Company Records"), subject to Paragraph 16.  EMPLOYEE further agrees not to engage in  any unauthorized destruction or deletion of Company Records during employment or upon termination of  employment, including, without limitation, the deletion of electronic files, data, records or e-mails.  EMPLOYEE agrees that all compilations of information possessed or acquired by COMPANY, or created or maintained by EMPLOYEE in the course of employment for COMPANY, such as business-related contact lists, prospect lists, and forms shall be the property of COMPANY and shall be treated as Company Records irrespective of whether they qualify as Confidential Information or not. EMPLOYEE acknowledges that EMPLOYEE's authorization to access COMPANY computer systems is limited and that access or use of such systems to compete or to prepare to compete is unauthorized and strictly prohibited. EMPLOYEE  will take such steps requested by COMPANY to inspect and confirm that Company Records have been removed or deleted from all storage places, equipment, devices or accounts in EMPLOYEE's control. Notwithstanding the foregoing, nothing herein prohibits EMPLOYEE  from retaining copies of wage and benefit statements and related records and information provided by COMPANY to

EMPLOYEE regarding EMPLOYEE's compensation and benefits (including but not limited to insurance claims), information lawfully made publicly available by COMPANY, and documents required for EMPLOYEE's compliance with state and federal income tax and similar reporting requirements.

**8.**     **REMEDIES; DAMAGES:** (a) EMPLOYEE recognizes that irreparable damage will result to COMPANY in the event of the violation of any covenant contained in Paragraphs 3, 4, 6 and 7 hereof made by EMPLOYEE, and  agrees that in the event of such violation, COMPANY shall be entitled to, and EMPLOYEE agrees to the entry of, an injunction (temporary restraining order, preliminary and permanent) or other equitable relief  in any court of competent jurisdiction, enjoining any such violations by EMPLOYEE. In furtherance of the foregoing,  EMPLOYEE hereby waives any and all defenses EMPLOYEE may have on the ground of the lack of jurisdiction or  competence of the court to grant such an injunction or other equitable relief.

(b)     EMPLOYEE further recognizes and acknowledges that it would be difficult to ascertain any damages incurred (if not prevented by an injunction) arising from a violation by EMPLOYEE of the covenants contained in Paragraphs 3, 4, 6 and 7 hereof.  EMPLOYEE agrees that as damages, and not as a penalty, arising as a consequence of a violation of the covenants contained in Paragraphs 3, 4(a), 4(c), 6 and 7 EMPLOYEE shall pay to COMPANY an amount equal to one hundred percent  (100%) of the gross profit, or twenty-five percent (25%) of  the  gross  sales,  whatever  amount  is  greater,  resulting  from business generated by EMPLOYEE, either directly or indirectly, on EMPLOYEE's own account or as agent, owner,  officer,  director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through soliciting or otherwise competing for COMPANY's Business, customers, personnel or using or disclosing Confidential Information  in violation of Paragraphs 3, 4(a), 4(c), 6 or 7 hereof.  In the event  that EMPLOYEE violates Paragraph 4(b), then EMPLOYEE shall pay to COMPANY a sum equal to 15% of the total annual   compensation that COMPANY paid to each Regular Employee.  This amount of liquidated damages based on total annual compensation is a good-faith attempt to estimate the actual damages that will result from violation of Paragraph 4(b) based on the costs to COMPANY of recruiting,

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

training, and loss of productivity through the loss of a Regular Employee who is improperly solicited away.

( c )     If EMPLOYEE violates one of the post-employment restrictions in this Agreement that contains a time limitation, the time period for the restriction at issue shall be extended by one day for each day EMPLOYEE remains in violation of the restriction; provided, however, that this extension of time shall be capped so that once EMPLOYEE has complied with the restriction for the originally proscribed length of time, it shall expire.

(d)     The foregoing shall not preclude any other rights or remedies at law or in equity that COMPANY may have.

**9.**     **WAIVER OF BREACH:** The waiver by COMPANY of a breach of any provision of this Agreement by the  EMPLOYEE shall not operate or be construed as a waiver of any subsequent breach by the EMPLOYEE. No waiver of any rights under this Agreement will be effective as to COMPANY unless made in writing and signed by an authorized officer of COMPANY.

**10.**     **SITUS OF AGREEMENT; JURISDICTION:** This Agreement is being entered into in the State of Maryland and thus shall be governed by, construed, interpreted and enforced in accordance with the laws of the   State of Maryland, without giving effect to the principles of conflicts of laws thereof. Each of the parties hereto hereby irrevocably consents and submits to the exclusive jurisdiction of the Circuit Court for Anne Arundel County,  Maryland, or any Federal court sitting in the State of Maryland, for the purposes of any controversy, claim, dispute  or action arising out of or related to this Agreement, and hereby waives any defense of any inconvenient forum  and any right of jurisdiction on account of EMPLOYEE's place of residence or domicile.

**11.**     **SEVERABILITY:** If any term, provision, covenant or condition of this Agreement, or the application  thereof to any circumstance or party hereto, shall, to any extent, be invalid or unenforceable in any jurisdiction,   the remainder of this Agreement, or application of such term, provision, covenant or condition to such  circumstance or party, other than those as to which it is held invalid or unenforceable,

shall not be affected thereby, and each remaining term, provision, covenant or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not render unenforceable such provision in any other jurisdiction. Without limiting the generality of the foregoing, if a court of competent jurisdiction should determine that any of the restrictions contained in Paragraphs 3, 4 or 6 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

**12.      WAIVER OF RIGHT TO JURY TRIAL: BY EXECUTING THIS AGREEMENT, THE PARTIES HERETO KNOWINGLY AND WILLINGLY WAIVE ANY RIGHT THEY HAVE UNDER APPLICABLE LAW TO A TRIAL BY JURY IN ANY DISPUTE ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, EMPLOYEE'S EMPLOYMENT WITH COMPANY, OR THE ISSUES RAISED BY ANY SUCH DISPUTE.**

**13.      EARLY RESOLUTION CONFERENCE/NOTICE TO EMPLOYER.** EMPLOYEE will give COMPANY written notice at least fourteen (14) days prior to (a) violating any provision of Paragraphs 3, 4, 6 or 7; and/or (b) challenging the enforceability of Paragraphs 3, 4, 6 and/or 7 (including subparts), and will participate in a mediation or in-person conference if requested to do so by COMPANY within thirty (30) days of such a request in order to help avoid unnecessary legal disputes. Should EMPLOYEE fail to comply with this Paragraph's notice or mediation/in-person conference requirement, EMPLOYEE acknowledges and agrees that such failure will serve as a waiver of EMPLOYEE's right to challenge the enforceability of Paragraphs 3, 4, 6, and 7 to the extent permissible under applicable law. EMPLOYEE agrees that during employment and for a period of two (2) years thereafter, EMPLOYEE will provide any employer that offers him/her a position a copy of this Agreement before accepting the position offered. The parties agree that they will both have the right to express an opinion on the meaning and/or enforceability of this Agreement to EMPLOYEE's new or prospective employers. EMPLOYEE agrees not to use any such communication by COMPANY as the basis for a claim of tortious interference or other legal action against COMPANY. Any claim EMPLOYEE may have against COMPANY shall not prevent or limit the application of any restrictive

covenant in this Agreement.

14.    **ATTORNEYS' FEES:** Should COMPANY sue to enforce this Agreement or to seek damages or injunctive  relief for EMPLOYEE'S breach of this Agreement, and COMPANY is the prevailing party in such suit, COMPANY shall be  entitled to recover its attorneys' fees and costs incurred in connection with such suit.  COMPANY shall be considered the prevailing party if it is granted any legal or equitable relief, without regard to whether some of the  relief requested by it is denied or whether the Court needed to reform portions of the Agreement to enforce it.

15.    **ENTIRE  AGREEMENT/ASSIGNMENT:** This  Agreement  represents  the  entire  agreement between  the  parties  with  respect to  the  subject matter  covered  by  this  Agreement. This  Agreement supersedes any and all prior agreements  or understandings, oral or written, between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE agrees that COMPANY may assign this Agreement to any transferee of all or substantially all of the assets of COMPANY, and hereby consents to any such  assignment, which shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder.  EMPLOYEE agrees that this Agreement may be enforced  by  COMPANY's  assignees  without  need  of  any  further   authorization  or  agreement  from EMPLOYEE. The parties hereto understand that this Agreement shall remain in  effect notwithstanding any job change, change in responsibilities, or job assignment by EMPLOYEE within or  between COMPANY or its Affiliates.   COMPANY and its parent, subsidiaries, Affiliates, and divisions that EMPLOYEE provides services to or is provided Confidential Information about are all intended beneficiaries of this Agreement, including TEKsystems, Aston Carter, Allegis Global Solutions, and EASi, and shall be treated the same as COMPANY for purposes of all of the protections provided for in this Agreement. EMPLOYEE's obligations under this Agreement are personal in nature and thus cannot be assigned or disavowed by EMPLOYEE without COMPANY's written consent.

16.    **AGREEMENT LIMITATIONS:** The purpose of this Agreement is to protect COMPANY from harm through misappropriation of its trade secrets, proprietary information and materials, and other

forms of unfair competition. Nothing in this Agreement prohibits EMPLOYEE from communicating information (Confidential Information or otherwise) about or reporting an event that EMPLOYEE reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Equal Employment Opportunity Commission), requires notice to or approval by COMPANY before doing so, or prohibits EMPLOYEE from cooperating or participating in an investigation or legal proceeding conducted by such a governmental agency, provided, however, that this shall not be construed to permit illegal conduct such as unauthorized access to COMPANY's computer systems or theft of COMPANY property. EMPLOYEE acknowledges notice that under the 2016 Defend Trade Secrets Act (DTSA): (a) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (b) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order.

Nothing in this Agreement shall prohibit EMPLOYEE or other employees from exercising the rights protected by the National Labor Relations Act (NLRA). Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities. The foregoing exceptions shall not, however, be deemed to authorize or limit liability for an act by EMPLOYEE that would otherwise be illegal absent this Agreement

DocuSign Envelope ID: BE572562-FA51-4D05-8ED6-F79C7E7B0D43

such as unlawful access of material by unauthorized means, or theft of COMPANY property.

EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, AND ENTERS INTO IT KNOWINGLY AND VOLUNTARILY.

As WITNESS the hands and seals of the parties hereto the year and day first above written.

ASTON CARTER, INC.

BY: _____

Taressa Lawrence
(PRINT NAME)

EMPLOYEE:

BY: _____

Christopher Bero
(PRINT NAME)

## APPENDIX OF STATE-SPECIFIC MODIFICATIONS

### California:

While EMPLOYEE is a resident of California and California law controls: (a) the restrictions in Paragraph 4(a)  will be limited so that they only apply where EMPLOYEE is aided by the use or disclosure of trade secrets; (b) the restrictions in Paragraph 3, 4(b)(i), and 4(c)(iii) will not apply; and (c) provisions in Paragraph 10 will not apply; and the jury trial waiver contained in Paragraph 12 will not apply.

### Colorado:

While EMPLOYEE is a resident of Colorado and Colorado law controls, if EMPLOYEE is not an executive, member of management, officer, or an employee who constitutes professional staff to executive and management personnel, then Paragraph 3  shall be modified as follows:

EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by COMPANY or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, if such activity would involve the use or disclosure of COMPANY's trade secrets, any business that is engaging in or preparing to engage in any aspect of COMPANY's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained trade secrets during the Look Back Period, within the Restricted Period during Look Back Period.

For purposes of Paragraph 4(a), the non-solicitation obligation is to protect COMPANY from misuse of trade secrets relating to COMPANY's Covered Customers that EMPLOYEE received access to, and the definition of Covered Customer shall be modified to only include those that EMPLOYEE had obtained trade secrets about during Look Back Period.

### Illinois:

While EMPLOYEE is a resident of Illinois and is paid $13.00 per hour or less, the restrictions in Paragraph 3  will not apply.

### Georgia:

While EMPLOYEE is a resident of Georgia and Georgia law controls the jury trial waiver contained in Paragraph 12 will not apply.

### Louisiana:

While EMPLOYEE is a resident of Louisiana and Louisiana law controls, the enforcement of the restrictions in Paragraphs 3 and 4(a) will be limited within the state of Louisiana to  the following Parishes where EMPLOYEE has helped or will help COMPANY do business, or the portions of these Parishes that are covered by the Restricted Area definition, whichever is fewer; provided, however, that nothing in Agreement may be construed to prohibit the enforcement of Paragraphs 3 and 4(a) in accordance with their terms  in states outside of Louisiana (circle all that apply):

| | | | |
|---|---|---|---|
| Acadia | Allen | Ascension | Assumption |
| Avoyelles | Beauregard | Bienville | Bossier |
| Caddo | Calcasieu | Caldwell | Cameron |
| Catahoula | Claiborne | Concordia | De Soto |
| East Baton Rouge | East Carroll | East Feliciana | Evangeline |
| Franklin | Grant | Iberia | Iberville |
| Jackson | Jefferson | Jefferson Davis | Lafayette |
| Lafourche | La Salle | Lincoln | Livingston |
| Madison | Morehouse | Natchitoches | Orleans |
| Ouachita | Plaquemines | Pointe Coupee | Rapides |
| Red River | Richland | Sabine | St. Bernard |
| St. Charles | St. Helena | St. James | St. John the Baptist |
| St. Landry | St. Martin | St. Mary | St. Tammany |
| Tangipahoa | Tensas | Terrebonne | Union |
| Vermilion | Vernon | Washington | Webster |
| West Baton Rouge | West Carroll | West Feliciana | Winn |

**Massachusetts:**

While EMPLOYEE is a resident of Massachusetts and Massachusetts law controls, Paragraph 3 shall not apply, and COMPANY shall not be bound by the Massachusetts Noncompetition Agreement Act.

**Nebraska:**

While EMPLOYEE is a resident of Nebraska and Nebraska law controls, Paragraphs 3, 4(b)(i) and 4(c)(iii) shall not apply, and the enforcement of the restrictions in Paragraph 4(a) will be limited to customers and clients with whom EMPLOYEE did business and had personal contact.

**Nevada:**

While EMPLOYEE resides in Nevada and Nevada law controls, then the Restricted Period shall be six (6) months if EMPLOYEE has been employed with COMPANY for less than twelve (12) months, and twelve (12) months if EMPLOYEE has been employed with COMPANY for twelve (12) months or more. The restrictions in Paragraph 4(a) regarding business conducted with a Covered Customer shall be modified to provide that nothing in the restriction will prohibit EMPLOYEE from providing service to a former Covered Customer that EMPLOYEE did not solicit if the Covered Customer voluntarily chooses to seek services from EMPLOYEE without any contact instigated by EMPLOYEE.

**New York**:

While EMPLOYEE resides in New York and New York law controls, Paragraph 4(a) shall be deemed modified so that the definition of "Covered Customer" excludes those customers who became customers of COMPANY only as result of EMPLOYEE's independent contact and business development efforts with them prior to and independent from EMPLOYEE's position with COMPANY.

**North Carolina**:

While EMPLOYEE is a resident of North Carolina and North Carolina law controls, the definition of "Look Back Period" as set forth in Paragraph 3 is modified to mean the period EMPLOYEE was employed by COMPANY looking back one (1) year from the date of termination, or if not enforceable, then such lesser period as a court deems enforceable, and the jury trial waiver contained in Paragraph 12 will not apply.

**North Dakota:**

While EMPLOYEE resides in North Dakota and North Dakota law controls, Paragraphs 3, 4(b)(i), and 4(c)(iii) shall not apply, Paragraph 4(a) shall only be applicable to the extent that EMPLOYEE's conduct involves the unauthorized use or disclosure of COMPANY's trade secrets.

**Oklahoma**:

While EMPLOYEE resides in Oklahoma and Oklahoma law controls, Paragraph 3 shall not apply, and Paragraph 4(a) shall be modified to provide that EMPLOYEE may not directly solicit the sale of goods, services, or a combination of goods and services, that compete with those of COMPANY from the established customers of COMPANY.

**Utah**:

While EMPLOYEE is a resident of Utah and Utah law controls, Paragraph 3 is modified to reduce the Restricted Period to 12 months.

**Wisconsin:**

While EMPLOYEE resides in Wisconsin and Wisconsin law controls, Paragraph 4(b) shall apply to an employee of COMPANY that EMPLOYEE worked with or was provided Confidential Information about during the Look Back Period, if the COMPANY employee is in a management, supervisory, sales, research and development, or similar role where he or she is provided Confidential Information or is involved in business dealings with COMPANY's customers; and the last sentence of Paragraph 8 regarding tolling shall not apply.


**All employees in the states listed above must initial and date this appendix.**


3/5/2021
_____**Date**

_____ **(Initials)**